UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO. |
| Plaintiff, | |
| VERSUS | JUDGE |
| KIRBYJON HINES CALDWELL and GREGORY ALAN SMITH, | MAGISTRATE JUDGE |
| Defendants, | |

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

INTRODUCTION

1. The Commission brings this action to enjoin Kirbyjon Hines Caldwell ("Caldwell") and Gregory Alan Smith ("Smith") (collectively "Defendants") from further violations of the registration and antifraud provisions of the federal securities laws by offering and selling participation rights in certain historical Chinese bonds (the "bonds") to mostly vulnerable and elderly investors, some of whom liquidated their annuities to invest in this scheme.

2. Between approximately April 2013 and August 2014, Defendants raised at least $3,488,500 through a scheme to defraud approximately 29 investors through the fraudulent offer and sale of the bonds. Among other material misrepresentations and omissions, Defendants falsely represented to these investors that the bonds were safe, risk-free, worth tens, if not hundreds, of millions of dollars, and could be sold to third parties. In reality, the bonds were mere collectible memorabilia with no investment value. Both Caldwell and Smith exerted

control and influence over the scheme, and offered credibility to the investment by, respectively, being a well-known pastor and claiming to be an investment adviser.

3. Through their conduct, Caldwell and Smith violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder, [17 C.F.R. § 240.10b-5]. Further, Smith violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]. Unless the Court enjoins the Defendants, they are reasonably likely to continue to violate these provisions of the federal securities laws.

## DEFENDANTS

4. Caldwell, age 64, is a resident of Houston, Texas. During the relevant period, Caldwell was the Senior Pastor at Windsor Village United Methodist Church (the "church"), one of the largest Protestant churches in the U.S. In the past, Caldwell has been a board member of various public companies, and he currently serves on the board of a company traded on the New York Stock Exchange. Caldwell also acted as a director to a mutual fund complex during the relevant time period. He and his wife are the co-owners of LDT, LLC ("LDT"), a Wyoming limited liability company which received and held investor funds.

5. Smith, age 55, is a resident of Shreveport, Louisiana. Between December 1999 and July 2010, Smith was associated with a registered broker-dealer. In July 2010, Smith was permanently barred from association with any FINRA member in any capacity, in part for commingling investor funds in his business account and for misappropriating investor funds.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act[15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78(a)]; and Section 209(d) and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14(a)].

7. The Court has personal jurisdiction over the Defendants, and venue is proper in the Western District of Louisiana, because many of the Defendants' acts and transactions constituting violations of the federal securities laws occurred in the district. In addition, at all relevant times, Smith and the vast majority of the victims resided in the district.

8. In connection with the conduct alleged in the Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, or the mails.

## FACTS

### A. Background and Mechanics of the Offering

9. From at least April 2013 until August 2014, Caldwell and Smith offered and sold to at least 29 investors participation rights in various historical or Pre-revolutionary Chinese Bonds which Caldwell claimed to own, control, or possess. In some cases, Defendants told investors that their funds would be used to purchase the bonds. Smith, who worked as a financial planner, was responsible for finding investors for this offering. He did so by promising investors exorbitant returns. Smith also represented to many investors that he was an "investment adviser" with many years of prior experience assisting others with their investments and he advised these individuals concerning whether to invest in this scheme.

10. Smith was instrumental in securing investors for this scheme because he had longstanding ties to prospective investors and operated under the guise of an investment adviser with many years of experience advising clients on similar deals. In one case, Smith promised an investor that she would receive 15 times her original investment within 30 days and any funds she invested would be returned within 5 days of any demand for the funds. Smith also falsely told her that he (Smith) had personally invested $250,000 in the deal.

11. Once an investor agreed to invest, Caldwell instructed the investor to wire transfer payment to either a bank account controlled by his attorney or an account in the name of LDT, a Wyoming limited liability company whose only members are Caldwell and his wife. Immediately after the investor sent the money, Caldwell would cause the funds to be transferred to personal accounts of Caldwell, Smith, or a Mexican business associate.

## B. The Material Misrepresentations and Omissions about the Bonds

### 1. Background on Pre-Revolutionary Chinese Bonds

12. Prior to the 1949 communist takeover in China, the former republic issued billions of dollars' worth of government bonds. These bonds have been in default since 1939 and the current Chinese government refuses to recognize the debt.

### 2. Material Misrepresentations and Omissions

13. Smith successfully raised money for this offering by claiming the deal was available to only a few select individuals. Smith falsely told some investors that the money raised would be used to acquire more Chinese bonds. He repeatedly told investors that the bonds were "risk free," "guaranteed," and "safe" and that there were buyers lined up to purchase the bonds. Smith also told investors that the bonds would either be sold to a third party or redeemed by the Chinese government. Caldwell also made similar oral misrepresentations to several

investors about the safety of the investment, both before and after they invested. In fact, he even told one investor who invested approximately $800,000 that the bonds were backed by gold or silver. Both Smith and Caldwell told investors that the bonds were valuable and worth tens, if not hundreds, of millions of dollars. Neither disclosed that the bonds were in default and no liquid market for the bonds existed. Caldwell and Smith also never told investors they would use investor funds to pay for personal expenses.

14. Although many investors did not understand the investment, they ultimately trusted Smith and took comfort in the fact that a high-profile pastor was offering the investment. Among other things, Smith falsely represented to investors that he too had invested in the bonds and that investors were guaranteed a return on investment which would be paid in less than one year. In one case he promised a return on investment in as little as 30 days. However, Smith failed to tell these investors that these bonds had already matured and had been in default for decades, or that they were not redeemable at all. Smith also failed to disclose that he was receiving compensation for recommending the investment to prospective investors.

### 3. The Participation Agreements

15. Once Smith found investors for the offering, Caldwell directed his attorney to draft a participation agreement containing the terms of the investment. The participation agreements, many signed by Caldwell, usually included the investment amount, a vague description of the bond, an exorbitant return on investment, a profit-sharing provision, depository bank information, and a "failure to close" option pursuant to which the investor could request his or her money back in the event Caldwell was unable to sell the bonds. Many of the participation agreements given to investors generally described the bonds as "historical Chinese Bonds" and

several of the agreements specifically identified the bonds as having a date before the Chinese communist revolution in 1949.

16. Under the terms of the participation agreements, the investors' expectation of a return on their investment was based solely upon Caldwell's ability to sell the bonds to a third party purchaser. In fact, many of the participation agreements expressly stated that Caldwell was in control and possession of the bonds and that he planned to sell the bonds to third party purchasers. All investors invested money in a common enterprise with the expectation of profits solely from the efforts of the promoters or third parties. This offering was not registered with the Commission. Specifically, no registration statement was filed or in effect pursuant to the Securities Act with respect to the offering. Furthermore, most of the investors who invested in this scheme were not accredited and no exemption from registration was available. In fact, many were unsophisticated retirees who liquidated their annuities to invest in this scheme pursuant to Smith's advice.

### 4. Lulling Emails and Texts

17. Throughout 2014, Caldwell and Smith continued to send emails and texts promising investors that they would be paid. These lulling emails usually provided elaborate explanations for why Caldwell had been unable to sell the bonds. Excuses ranged from issues pertaining to international currency exchanges to failures of international organizations like the International Monetary Fund or the World Bank to approve the redemptions. Although these excuses sounded plausible to some investors, they had no basis in fact.

18. In some emails Defendants promised that an alleged prospective buyer was interested in purchasing or redeeming the bonds, and that the deal would close within a short period of time. However, none of these deals ever transpired.

19. Caldwell also held frequent investor calls to explain the reasons for the delays. Smith and purported foreign intermediaries participated in these calls to provide further insight on the status of the sale of the bonds to third parties. Many investors received lulling emails and text messages from Caldwell or Smith. Some investors spoke directly with Caldwell about the failed deals. He repeatedly told them to remain faithful and that they would receive their money. Caldwell also used religious references in his lulling emails to give investors hope that they would soon be repaid. Finally, Caldwell sometimes used the alias "Turner Hines" when communicating with investors.

20. Caldwell and Smith received approximately $760,000 and $1,000,000, respectively, of investor funds. LDT, controlled by Caldwell, also received approximately $1,000,000 of investor funds, approximately $175,000 of which was transferred to Caldwell. Offshore third parties, at least one in Mexico, received most of the remainder of the investor funds. Investor funds were comingled with other funds in Caldwell's and Smith's bank accounts. Caldwell and Smith used these accounts in part to pay for personal expenses, including mortgage payments in the case of Caldwell and luxury automobiles in the case of Smith. No investor to date has ever received any return on his or her investment. The great majority of investors have never even received their principal back.

## CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 5(a) and (c) of the Securities Act**
**(As to Caldwell and Smith)**

21. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

22. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

23. From April 2013 through August 2014, Defendants, directly and indirectly:

   (a) Made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities as described herein, through the use or medium of a prospectus or otherwise;

   (b) Carried securities or caused such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

   (c) Made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

24. By reason of the foregoing, Caldwell and Smith violated and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### (As to Caldwell and Smith)

25. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

26. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, or recklessly employed devices, schemes or artifices to defraud.

27. By reason of the foregoing, Caldwell and Smith violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Violations of Section 17(a)(2) of the Securities Act
### (As to Caldwell and Smith)

28. The Commission repeats and realleges Paragraphs 1 through 20 of this Complaint.

29. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading

30. By reason of the foregoing, Caldwell and Smith, violated and, unless enjoined, are reasonably likely to continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. § 77(q)(a)(2)].

## COUNT IV

### Violations of Section 17(a)(3) of the Securities Act
### (As to Caldwell and Smith)

31. The Commission repeats and realleges Paragraphs 1 through 20 of this Complaint.

32. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities negligently engaged in

transactions, practices and courses of business which operated as a fraud or deceit upon purchasers of such securities.

33. By reason of the foregoing, Caldwell and Smith, violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77(q)(a)(3)].

## COUNT V

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(a)
### (As to Caldwell and Smith)

34. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

35. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of any means or instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

36. By reason of the foregoing, Caldwell and Smith violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act[15 U.S.C. § 78j(b), and Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a)].

## COUNT VI

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(b)
### (As to Caldwell and Smith)

37. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

38. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of any means or instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, knowingly or recklessly made untrue

statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

39. By reason of the foregoing, Caldwell and Smith violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act[15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b)].

## COUNT VII

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5(c)
### (As to Caldwell and Smith)

40. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

41. From April 2013 through August 2014, Caldwell and Smith, directly and indirectly, by use of any means or instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, knowingly or recklessly engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities and will operate as a fraud upon the purchasers of such securities.

42. By reason of the foregoing, Caldwell and Smith violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act[15 U.S.C. § 78j(b), and Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c)].

## COUNT VIII

### Violations of Section 206(1) Advisers Act
### (As to Smith)

43. The Commission repeats and realleges Paragraphs 1 through 20 of its Complaint.

44. At all relevant times, Smith, for compensation, engaged in the business of advising others as to the value of securities or as to the advisability of investing in, purchasing,

or selling securities and was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

45. Smith, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, knowingly or recklessly employed devices, schemes and artifices to defraud one or more clients or prospective clients.

46. By engaging in this conduct, Smith, directly and indirectly, violated, and unless enjoined, will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT IX

### Violations of Section 206(2) of the Advisers Act
### (As to Smith)

47. The Commission repeats and realleges Paragraphs 1 through 20 and 44 of its Complaint.

48. Smith, by the use of the mails or any means or instrumentality of interstate commerce, directly and indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

49. By reason of the foregoing, Smith violated and, unless enjoined, is reasonably likely to continue to violate Section 206(2) of the Advisers Act [15 U.S.C.§ 80b-6(2)].

### RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court find the Defendants committed the violations alleged and:

## I.

## Permanent Injunctive Relief

Issue permanent injunctions restraining and enjoining Caldwell and Smith, and their officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5], and also, with respect to Smith, from violating Sections 206(1)-(2) of the Advisers Act [15 U.S.C. § 80b-6(1) and 80b-6(2)].

## II.

## Civil Penalties

Issue an Order directing Caldwell and Smith to pay civil money penalties pursuant to Section 20(d) of the Securities Act[15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act[15 U.S.C. § 78u(d)(3)], and also, with respect to Smith, pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## III.

## Disgorgement

Issue an Order directing Caldwell and Smith to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

## Officer and Director Bar

Issue an Order, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)] barring Defendant Caldwell from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)].

V.

## Further Relief

Grant such other further relief as may be necessary and appropriate.

VI.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## DEMAND FOR JURY TRIAL

The Commission hereby demands trial by jury.

Respectfully submitted,

*Wilfredo Fernandez*

WILFREDO FERNANDEZ, FL BAR #142859
TRIAL ATTORNEY
ANDRE ZAMORANO, FL BAR #967361
JACQUELINE M. O'REILLY, FL BAR #29326
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile (305) 536-4154
fernandezw@sec.gov
zamoranoa@sec.gov
oreillyj@sec.gov

ALEXANDER C. VAN HOOK
UNITED STATES ATTORNEY
WESTERN DISTRICT OF LOUISIANA

/s/ *Katherine W. Vincent*
KATHERINE W. VINCENT #18717
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501-6832
Telephone: (337) 262-6618
Facsimile: (337) 262-6693
Katherine.Vincent@usdoj.gov